IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN KOHUTH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF WEST CHESTER, <u>et al.</u>, | : | No. 11-515 |
| | : | |
| Defendants. | : | |

**Goldberg, J.**                                                                                                          **April 29, 2013**

### MEMORANDUM OPINION

Plaintiff, Justin Kohuth, has brought suit against the West Chester Police Department, Corporal Joshua Lee of the West Chester Police Department, the Borough of West Chester and Jeremy Miles, for the serious injuries he sustained during a "sting operation" allegedly orchestrated at the direction of Corporal Lee. The complaint alleges claims under the state-created danger doctrine (Count I), <u>Monell</u> (Count II) and state law (Count III). On May 25, 2012, Defendants Corporal Lee, West Chester Police Department and the Borough of West Chester filed a motion for summary judgment with regard to Counts I and II of the complaint. For the reasons stated below, Defendants' motion will be granted in part and denied in part.

### I.   FACTUAL AND PROCEDURAL HISTORY[1]

On December 16, 2009, Plaintiff, along with three other nursing students—Elizabeth Hofmann, Amanda Mastrippolito and Lindsay Lamonica—were celebrating the completion of their senior year at West Chester University. The students began their celebration at Hofmann's

---

[1] The following facts are undisputed, unless otherwise noted.

1

apartment, but eventually travelled to a local bar, where they spent the evening dancing and drinking until approximately 2:00 a.m. (Defs.' Stat. Facts, Doc. No. 31-3, at ¶¶ 2-4.)

As the students prepared to leave the bar, Hofmann realized that her cell phone was missing. Unable to locate the phone in the bar, the students repeatedly called Hofmann's number in order to determine who, if anyone, was in possession of the phone. (Id. at ¶¶ 4-5.) After repeated attempts, Plaintiff eventually reached a man who agreed to return the phone, and who stated that the situation was a "big misunderstanding." The man told the students to meet him at a location one-half block from Hofmann's apartment in downtown West Chester, where he promised to return the phone. (Id. at ¶¶ 6-7.) Plaintiff believed this location to be well lit, and did not have any serious concerns regarding a violent confrontation. (Pl.'s Stat. Facts, Doc. No. 33, at ¶ 8.) Although the four students waited at the first meeting place, no one appeared. (Defs.' Stat. Facts ¶ 9.)

Plaintiff then called Hofmann's phone several more times. (Id. at ¶ 10.) Eventually, a different male answered, and Plaintiff suggested that they meet at a second location, which he believed to be a well-lit area with cameras. That male also failed to appear at the designated meeting place. (Pl.'s Stat. Facts ¶¶ 12-13.)

While at the second location, the students saw a police officer parked in a nearby vehicle. Mastrippolito, who was growing very uncomfortable with the situation, walked over to the officer, Corporal Joshua Lee, and began explaining the evening's events. While the four students were talking with Lee, Hofmann was able to make contact with the person in possession of her phone. The man told Hofmann to meet him at a third location, to come alone and to bring

thirty dollars in exchange for the phone. The four students all testified at deposition that they were very uncomfortable with the third meeting. (Id. at ¶¶ 14-15.)

The parties have vastly different accounts of Corporal Lee's response to the situation. Defendants point to Corporal Lee's deposition testimony, wherein he stated that he tried to convince the students to forget about recovering the phone and report it missing. Lee claimed that Hofmann and the others insisted on retrieving the phone against his advice, at which point he told the students that he would follow them to the third meeting place. Lee further testified that he told the students that they should not approach anyone, but should instead wait for him to arrive, and that he would attempt to recover the phone. (Defs.' Stat. Facts ¶¶ 16, 18.)

Plaintiff urges that his version and that of the three other students differ from Corporal Lee's account and create a factual dispute. When interviewed by police shortly after the incident, and at his deposition, Plaintiff claimed that Corporal Lee directed the students to continue on to the third meeting place with thirty dollars, and that he would follow closely behind. (Doc. No. 31-8, Ex. N; Kohuth Dep., Doc. No. 34-3, pp. 62-64.) Plaintiff also testified that Lee told Hofmann to walk on one side of the street so as to look like she was alone, and told the others to walk on the opposite side of the street. Plaintiff further testified that Lee did not tell any of them what to do once they reached the man with the phone. (Pl.'s Stat. Facts ¶ 16.)

The other three students also testified that Corporal Lee did not tell them what to do upon reaching the man with the phone, and assured them that he would arrest the man once Hofmann made contact. It is unclear from Lamonica, Hofmann and Mastrippolito's testimony who specifically suggested going through with the third meeting. However, all three testified that Corporal Lee's involvement was the deciding factor in going ahead to the third location.

3

(Hofmann Dep., Doc. No. 34-2, pp. 39-40; Lamonica Dep., Doc. No. 34-7, pp. 19-20; Mastrippolito Dep., Doc. No. 34-4, pp. 30-31.)

The parties agree that the following occurred next: Hofmann walked to the third meeting place on one side of the street, while Plaintiff, Lamonica and Mastrippolito followed at a distance on the opposite sidewalk. As Hofmann reached the agreed upon destination, she turned a corner, putting her outside of the others' lines of sight. An unknown person, who was later identified as Defendant, Jeremy Miles, was present at the third location and told Hofmann to follow him to his apartment. Plaintiff then rushed around the corner in order to protect Hofmann and a struggle ensued between Plaintiff and Miles. During this struggle Miles stabbed Plaintiff in the left eye with a knife.[2] Plaintiff and Miles fought for five to fifteen seconds before the police arrived. Miles was then tased and arrested.[3] (Pl.'s Stat. Facts ¶¶ 21, 23, 25; Defs.' Stat. Facts ¶ 22.)

Plaintiff claims that as a result of the stabbing, he lost his left eye and has suffered "nerve damage, fracture of the orbital bone, scar[r]ing, loss of taste and smell, loss of vision including depth perception, lacerations[ ] and tissue damage." (Compl. ¶ 47.)

Plaintiff filed his complaint on January 24, 2011, alleging: (1) a state-created danger claim under 42 U.S.C. § 1983 against Corporal Lee; (2) a Monell claim against the Borough of West Chester and the West Chester Police Department under 42 U.S.C. § 1983; and (3) assault,

---

[2] Plaintiff testified that he was stabbed prior to making any physical contact with Defendant Miles. However, Defendants dispute this testimony.

[3] Miles pled guilty to multiple charges, including aggravated assault and battery. He was sentenced to eight to sixteen years in prison. (Pl.'s Stat. Facts ¶ 29.)

4

battery, simple assault and harassment under Pennsylvania law against Miles.[4] (Compl. ¶¶ 48-73.) Defendants Corporal Lee, the Borough of West Chester, and West Chester Police Department filed a motion for summary judgment on May 25, 2012 with regard to Counts I and II of the complaint.[5] The motion is now fully briefed and ready for disposition.

## II. STANDARD OF REVIEW

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that judgment is appropriate as a matter of law. FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). The non-moving party cannot avert summary judgment with speculation or conclusory allegations, but rather must cite to the record. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); FED. R. CIV. P. 56(c). On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 256.

---

[4] Default was entered against Defendant Miles on July 14, 2011 for failure to appear, plead or otherwise defend pursuant to Federal Rule of Civil Procedure 55(a).

[5] After the motion for summary judgment had already been filed, the parties executed a stipulation of dismissal with regard to Defendant West Chester Police Department. (Doc. No. 37.)

## III. DISCUSSION

### A. State-Created Danger - Qualified Immunity

Defendants first argue that Corporal Lee is entitled to qualified immunity for Count I of the complaint because a reasonable police officer placed in the same situation would not have had reason to believe that his course of action would violate the Constitution. (Defs.' Br., pp. 19-20.)

Government officials are extended qualified immunity in section 1983 actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Id. at 1245 (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). A court must engage in a two-part inquiry to determine if qualified immunity applies: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly' established at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

#### 1. Violation of a Constitutional Right – The State-Created Danger Doctrine

In DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), the United States Supreme Court held that a state does not have an affirmative obligation to protect its citizens from private violence under the Due Process Clause. However, the Court

noted that when a state takes a person into custody, it assumes an affirmative duty to protect him from harm. Id. at 199-200. The principle derived from this statement has developed into what is known as the state-created danger doctrine. A state-created danger exists "when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006) (quoting Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)).

> There are four required elements to a state-created danger claim:
>
> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright, 443 F.3d at 281 (quotation marks omitted). Defendants argue that Plaintiff has not established a genuine issue of material fact as to any of the above elements. For the reasons that follow, we disagree.

    *a. Foreseeability*

Defendants first argue that: (1) it was not foreseeable that Plaintiff would disregard Corporal Lee's direction and cross the street; (2) it was not foreseeable that Plaintiff would disregard Corporal Lee's direction and approach Miles; (3) it was not foreseeable that Miles would attack Plaintiff; and (4) there is no indication that Miles attacked first.

7

With regard to the first two arguments, Defendants point to Corporal Lee's deposition testimony, which reflects that Plaintiff and his companions were told not to meet with Miles and not to approach anyone who might appear. Accepting such arguments would require us to adopt Corporal Lee's version of the facts and disregard Plaintiff's version. Plaintiff testified that Corporal Lee did not provide any instruction on what the students were to do when they reached the third meeting place. If Plaintiff did not receive any direction from Lee to stay away from Miles, a jury could certainly conclude that it was foreseeable the Plaintiff would cross the street and approach Miles to retrieve the phone. Courts may not make credibility determinations at the summary judgment stage. Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993) cert. denied, 510 U.S. 994 (1993)).

As to Defendants' third argument—that it was not foreseeable that Miles would attack Plaintiff—Plaintiff has presented an expert report from W. Ken Katsaris, which opines that the illegal activity described to Corporal Lee should have put him on notice of an ongoing, dangerous situation that was escalating.[6] (Katsaris Report, Doc. No. 34-13, pp. 4-7.) This opinion creates a factual question regarding the foreseeability of the harm caused. Aside from Katsaris' opinion, we also conclude that the facts in Corporal Lee's possession at the time the decision was made—that a person had stolen Hofmann's phone and was attempting to extort money for its return, coupled with the change of meeting place and lateness of the hour—all created additional fair inferences that some type of assault was foreseeable.

---

[6] Katsaris has been presented as an expert in police practices—specifically those relating to citizen involvement in police investigations. (See Katsaris Report, Doc. No. 34-13, pp. 1-2.)

Defendants next raise the argument that Plaintiff initiated the physical altercation with Miles, and thus the harm that occurred was not foreseeable. However, Plaintiff testified that he was stabbed by Miles prior to making any physical contact, creating yet another factual issue for a jury to resolve.

Finally, in order to establish that the injury was fairly direct, Plaintiff must demonstrate that Corporal Lee's actions "precipitated or served as the catalyst for the subsequent [injury]." Grau v. New Kensington Arnold Sch. Dist., 429 Fed. Appx. 169, 172 (3d Cir. 2011). Plaintiff testified that he was directed by Corporal Lee to meet with Miles. Thus, a reasonable jury could find that the harm ultimately caused was precipitated by Corporal Lee's instructions.

    *b. Shocks the Conscience*

With regard to the second prong, Defendants argue that there is no genuine dispute as to whether Corporal Lee's actions shocked the conscience. Defendants point out that Lee testified to advising Hofmann to simply report her phone stolen and that only upon her insistence to meet with Miles did he agree to follow and intercept the person with her phone. Lee also insists that he told Plaintiff, Mastrippolito and Lamonica to stay on the opposite side of the street. Defendants urge that had the students followed Lee's instructions, Plaintiff would not have been injured. Therefore, Defendants assert that Corporal Lee's conduct does not meet the required level of culpability to satisfy the second prong—that is, that it does not shock the conscience.[7]

"[T]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends on the circumstances of a particular case and depends in particular on 'the extent to

---

[7] Defendants also argue that Corporal Lee's "plan" involved only himself, Hofmann and Miles, not Plaintiff. However, by his own admission, Lee provided some instruction to Plaintiff, Mastrippolito and Lamonica. We address this issue further under Section III.A.1.c, infra.

9

which a state actor is required to act under pressure.'" Walter v. Pike County, Pa., 544 F.3d 182, 192 (3d Cir. 2008) (quoting Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999)); Sanford v. Stiles, 456 F.3d 298, 301 (3d Cir. 2006)). When a state actor is faced with a hyperpressurized situation, such as a police chase, only intent to harm will shock the conscience, but when a state actor has time to make an unhurried judgment, deliberate indifference will suffice. Id. (quoting Sanford, 456 F.3d at 309). Alternatively, "[w]hen a state actor is not confronted with a 'hyperpressurized environment' but nonetheless does not have the luxury of proceeding in a deliberate fashion," an intermediate standard applies, where a plaintiff must demonstrate that the state actor "consciously disregarded a great risk of harm." Sanford, 456 F.3d at 310. While Corporal Lee was informed of on-going criminal conduct, and likely felt pressured to act quickly, he also had several minutes to deliberate the best course of action. Thus, we find that the intermediate standard, requiring a conscious disregard of a great risk of harm, is applicable.

In support of their argument that Corporal Lee's conduct does not demonstrate a conscious disregard of a great risk of harm, Defendants rely on Walter v. Pike County, Pa., 544 F.3d 182 (3d Cir. 2008) and Matican v. City of New York, 524 F.3d 151 (2d Cir. 2008). However, these cases are distinguishable from the present case. Both Walter and Matican involved situations where, after careful deliberation and weighing of risks, the police chose to use the plaintiffs in a sting operation in order to arrest a criminal. After the successful arrests, the criminal in each case was released on bail and attacked the plaintiffs.

Here, viewing the facts in the light most favorable to Plaintiff, a police officer directed a group of inebriated college students to engage in a "sting operation" late at night, where obvious

criminal activity was unfolding, and did not provide them with proper instruction. A jury could certainly conclude that these facts "shock the conscience." Importantly, unlike Walter and Matican, Plaintiff was injured during the "sting," not afterward.

Defendants also urge that Walter stands for the proposition that, as a matter of law, "officers utilizing a civilian to assist the arrest of a convicted, violent felon, who had allegedly committed another felony, could not form the basis of a state-created danger claim." (Defs.' Br., p. 12) (emphasis in original.) Defendants' reading of the Walter case is inaccurate. The Walter court engaged in a fact-intensive analysis and found, under the specific set of circumstances before it, that the officers' conduct was "at most highly negligent." Walter, 544 F.3d at 192-94.

Finally, we note that Plaintiff's expert has opined that Corporal Lee's actions fell significantly below the standards established by West Chester police procedures for the use of citizens in a police investigation. (Katsaris Report, p. 11.) This opinion, along with the facts presented by Plaintiff, establishes that there is a genuine issue of material fact as to whether Corporal Lee consciously disregarded a great risk of harm to Plaintiff, so as to shock the conscience.

### c. *Relationship Between the State and Plaintiff*

With regard to the third prong of the state-created danger test, Defendants argue that Plaintiff was not a foreseeable victim of the danger allegedly created by Corporal Lee's conduct. In order to satisfy the third requirement, a plaintiff must be within a specific subset of foreseeable victims, and cannot simply be a member of the public at large. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 913-14 (3d Cir. 1997). Although Defendants assert that only Hofmann, as the owner of the cell phone, would qualify as a foreseeable victim in this case,

Plaintiff was one of four students who approached Corporal Lee for guidance, and both parties agree that Corporal Lee provided some instruction to all members of that group. Therefore, we find that Plaintiff has established a genuine issue of material fact as to whether a relationship existed between the state and Plaintiff, such that Plaintiff was a foreseeable victim.

### d. Affirmative Use of Authority

Under the state-created danger doctrine, "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Bright v. Westmoreland Cnty., 443 F.3d 276, 282 (3d Cir. 2006). An affirmative action by a state actor must create a dangerous situation or leave a plaintiff more vulnerable to danger than had the state actor failed to get involved. Id. at 282-83.

Defendants argue that the only affirmative actions taken by Corporal Lee—agreeing to follow Hofmann in order to observe the area and warning Plaintiff not to take any action if the individual with the phone appeared—was not an affirmative use of authority that put Plaintiff in more danger than had Corporal Lee not acted at all. (Defs.' Br., p. 15.) This argument completely disregards Plaintiff's testimony, which demonstrates that Corporal Lee instructed the group to follow through with the third meeting, and the testimony of Plaintiff's three companions, which establishes that the students would not have continued to the third meeting absent Corporal Lee's involvement. Viewing these facts in the light most favorable to Plaintiff, a jury could find that but for Corporal Lee's direction to meet with Miles, Plaintiff would not have gone to the third meeting place, and thus would not have been injured.

In summary, due to the conflicting testimony on the issue of Corporal Lee's level of involvement in developing the plan to meet with Miles, and considering the evidence in the light

most favorable to Plaintiff, we find that there are genuine issues of material fact as to whether: (1) the injury to Plaintiff was foreseeable; (2) Corporal Lee consciously disregarded a great risk of harm,[8] so as to "shock the conscience"; (3) Plaintiff, as one of the four people who approached Corporal Lee for help, was part of a discrete class of persons that would foreseeably be harmed by Corporal Lee's actions; and (4) Corporal Lee affirmatively used his authority to either direct or encourage the students to meet Defendant Miles, placing them in more danger than had he not intervened at all. We therefore find that a reasonable jury could decide that Plaintiff experienced a violation of his constitutional rights.

### 2. Whether the Right at Issue Was Clearly Established

Defendants also argue that qualified immunity applies, and thus summary judgment must be granted, as to Count I of the complaint because the right at issue was not clearly established. Defendants posit that the lack of clearly established case law similar to these circumstances requires that we find that Corporal Lee was not on notice that his conduct would violate Plaintiff's constitutional rights.

In determining whether a defendant's conduct violated a clearly established right, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Assaf v. Fields, 178 F.3d 170, 177 (3d Cir. 1999) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The very act in question need not have been previously held unlawful, but instead, "in light of preexisting law the unlawfulness must be

---

[8] Because we find a genuine issue of material fact as to whether Corporal Lee acted with a conscious disregard to a great risk of harm to Plaintiff, we disagree with Defendants' argument that Plaintiff's claim for punitive damages should be dismissed. See Smith v. Wade, 461 U.S. 30, 56 (1983) (holding a jury may assess punitive damages under section 1983 where the defendant's conduct is shown to "involve[ ] reckless or callous indifference to the federally protected rights of others.")

apparent." Id.; see also Eddy v. Virgin Islands Water and Power Auth., 256 F.3d 204, 208 (3d Cir. 2001) (citing Good v. Dauphin Cnty. Soc. Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989)).

The state-created danger doctrine has been clearly established within this Circuit for well over a decade, long before the incidents in this case took place. See Rivas v. City of Passaic, 365 F.3d 181, 200 (3d Cir. 2004) (noting that the state-created danger doctrine was clearly established in this Circuit by Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996)). As noted previously, it is clear that an affirmative action taken by an officer will violate a citizen's substantive due process rights when: (1) the injury is foreseeable; (2) the officer's behavior shocks the conscience; (3) the citizen is part of a discrete class of persons that would foreseeably be harmed by the officer's actions; and (4) the affirmative action places the plaintiff in more danger than had the officer not acted at all. Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006).

Although we are unaware of a case with facts substantially similar to those before us, and the parties have not cited to any, we find that Plaintiff has presented sufficient evidence to establish all elements of the state-created danger doctrine. Plaintiff's testimony, the testimony of his companions and Katsaris' expert report tend to establish that Corporal Lee directed four potentially inebriated students to meet someone who was engaging in illegal activity that was clearly escalating. The surrounding circumstances, set out previously in great detail, create a genuine issue of material fact as to whether "every reasonable official would have understood" that Corporal Lee's actions violated Plaintiff's constitutional rights. Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Therefore,

summary judgment is not appropriate on qualified immunity grounds, and Defendants' motion must be denied with regard to Count I.

   B. **<u>Monell</u> Claim**

A municipality may be held liable for its employee's violation of a citizen's constitutional rights under section 1983, although not on a <u>respondeat superior</u> theory of liability. <u>Monell v. Dept. of Soc. Servs. of City of New York</u>, 436 U.S. 658, 690-92 (1978). To prevail on a <u>Monell</u> claim, a plaintiff must show a policy[9] or custom[10] created by a policymaker[11] that caused the alleged constitutional violation. <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing <u>Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 404 (1997)). To establish causation, "there must be an affirmative link between the policy and the particular constitutional violation alleged." <u>City of Okl. City v. Tuttle</u>, 471 U.S. 808, 823 (1985).

There are three circumstances under which a municipality may be held liable under <u>Monell</u>: (1) where the "appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy";

---

[9] A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986)).

[10] "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (quoting <u>Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 417 (1997)).

[11] Chief Scott Bohn, as the highest-ranking officer in the West Chester Police Department, is a "policymaker" for the purposes of <u>Monell</u> liability. (See Stip. of Facts, Doc. No. 34-19, ¶ 3.)

15

(2) "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself"; and (3) "where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice is so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale, 318 F.3d at 584 (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty, Okl. v. Brown, 520 U.S. 397, 417-18 (1997) (Souter, J., dissenting)). Only the third category is at issue here.

The Third Circuit has held that "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) (citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997)).

Defendants urge that summary judgment must be granted on Count II because Plaintiff has failed to present evidence that a prior, similar incident took place in the Borough of West Chester or that a supervisor had contemporaneous knowledge of the offending incident. They further argue that Plaintiff cannot show that they were deliberately indifferent to his constitutional rights, or that a policy or custom of the department caused Corporal Lee's actions.

In an attempt to establish Monell liability, Plaintiff argues that the West Chester Police Department failed to review Corporal Lee's conduct after the attack took place. Katsaris states that Lee's report should have spawned an internal investigation, and the fact that it did not

indicates that the Borough of West Chester has a custom of failing to supervise and discipline its officers. Plaintiff further argues that this custom led to Corporal Lee's conduct, and ultimately caused Plaintiff's injuries.

After carefully examining the evidence of record, we conclude that Plaintiff has failed to establish deliberate indifference on the part of the Borough of West Chester. Plaintiff has not presented evidence of any prior, similar incidents in the municipality, nor has he demonstrated that the uncontroverted decisionmaker, Chief Scott Bohn, was contemporaneously aware of the incident. Further, Plaintiff has not established that the West Chester Police Department has a policy or custom of failing to review the conduct of its officers, or that any such policy or custom was in effect with respect to Corporal Lee. To the contrary, Chief Scott Bohn testified that any report related to this incident would have been reviewed by a sergeant, and then gone to an administrative lieutenant for review. (Bohn Dep., Doc. No. 34-17, p. 27.) The administrative lieutenant, David Johnson, testified that he reviews all reports for compliance with federal and state reporting guidelines and ensures that a sergeant reviewed and signed off on the officer's work. (Johnson Dep., Doc. No. 34-18, p. 21.) Plaintiff has failed to present any evidence to suggest that a sergeant did not review or sign off on Corporal Lee's report in this instance.

Katsaris' expert report does not aid Plaintiff in avoiding summary judgment on this Count, as he simply recites the elements of a Monell claim. His report states that the failure of the police department to investigate the matter further or engage in disciplinary action against Corporal Lee indicates that the department has a custom and/or practice of failing to supervise officers who "utiliz[e] citizens during on-going criminal investigations." (Katsaris Report, pp. 13-14.) However, "[t]o infer the existence of a city policy from the isolated misconduct of a

17

single, [subordinate] officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in Monell." City of Okl. City v. Tuttle, 471 U.S. 808, 831 (1985). Further, even assuming a custom existed, Katsaris gives no indication how any such custom caused Plaintiff's injury.

Therefore, Plaintiff has failed to present sufficient evidence of a policy or custom which led to his injury, and he has failed to demonstrate deliberate indifference on the part of the Borough of West Chester. Accordingly, Defendants' motion for summary judgment on Count II of the complaint will be granted.

## IV. CONCLUSION

Plaintiff has raised sufficient factual questions that must be resolved by a fact-finder regarding his state-created danger claim and qualified immunity. However, no reasonable jury could find Monell liability based on the evidence presented by Plaintiff.

Our Order follows.